IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BOBBY FORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:10-cv-829-GPM-DGW |
| | ) |
| WARDEN DAVIS and KIM BUTLER, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

### REPORT AND RECOMMENDATIONS

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge G. Patrick Murphy pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the question whether Plaintiff exhausted his administrative remedies with the Illinois Department of Corrections prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 42 U.S.C. §1997e(a).  It is **RECOMMENDED** that the Motion for Summary Judgment filed by defendants (Doc. 24) be **GRANTED**; that the Court **FIND** that Plaintiff did not exhaust his administrative remedies prior to filing suit; that the action be **DISMISSED**; and that the Court adopt the following findings of fact and conclusions of law.

#### FINDINGS OF FACT

Plaintiff Bobby Ford was housed briefly in the Pinckneyville Correctional Center between July 13 and July 21, 2010.  Ford alleged that Defendants Davis and Butler informed him they were going to transfer him out of Pinckneyville because prison staff were trying to kill him for

filing past lawsuits against them. Davis and Butler then placed him in segregation, transferred him to Lawrence Correctional Center, and had him designated as an escape risk, all for the purported purpose of protecting him from Pinckneyville staff members. Ford alleged, however, that Davis and Butler placed him in segregation, transferred him, and designated him an escape risk not for his safety, but in retaliation for his past lawsuits. Upon threshold review, the Court allowed Ford to proceed on his retaliation claims against Defendants Davis and Butler (Doc. 13). Other defendants and claims were dismissed from the action.

Defendants Davis and Butler filed a motion for summary judgment on October 7, 2011, arguing that Plaintiff failed to exhaust his administrative remedies (Doc. 25). Based on the affidavit of Jackie Miller, chairperson of the Administrative Review Board (ARB), defendants claim that the ARB did not receive any grievances or appeals from Ford between July 15 and September 15, 2010, naming Davis or Butler or regarding retaliatory transfer, placement, or classification.

In response, Ford argued that he filed a grievance on August 3, 2010, but the ARB did not respond to it because he was complaining about wardens and officials who were able to influence the ARB to "conceal" the grievance.[1] In support of his claims, Ford submitted his Lawrence Correctional Center trust fund account statement, which demonstrated funds were deducted from his account for unspecified legal mail on August 3, 2010, and Offender Authorization for Payment vouchers signed by Ford, authorizing payment from his trust fund statement for legal mail to the

---

[1] Ford's alleged August 3, 2010, grievance complained of retaliation at by officials Pinckneyville Correction Center. At the time he filed the grievance, Ford was housed at Lawrence Correctional Center. Pursuant to ILL. ADMIN. CODE TIT. 20, § 504.870(a)(2), an inmate shall submit directly to the ARB grievances regarding disciplinary proceedings made at a facility other than the facility where the offender is currently assigned.

2

ARB on August 2, 2010,[2] and to the director of the IDOC to inquire about the ARB's failure to respond on October 12, 2010.[3] Ford also argued that as a frequent litigant, he was fully aware of the grievance process.

*Pavey Hearing*

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on the issue of exhaustion on April 26, 2012. Defendants argued simply that the ARB never received a grievance from Ford regarding retaliation by defendants in the case. They argued that no other evidence exists to demonstrate that Ford attempted to exhaust his administrative remedies as required. Thus, Ford did not properly exhaust his administrative remedies prior to filing suit. Ford, on the other hand, argued that the trust fund account statement and the two Offender Authorization for Payment vouchers he submitted to the Court support his claim that he wrote a grievance complaining about the retaliatory actions of Davis and Butler and sent it out of the institution. Ford further argued that after he placed the grievance in the outgoing mail, he no longer had control over it.

At the April 26 hearing, the Court reviewed Ford's trust fund account statement and Offender Authorization for Payment vouchers. The Court recognized that the vouchers authorizing payment were photocopies of the carbon copy retained by Ford, not originals, and Ford could have added the statements describing the mailing to his copy at any time. The Court inquired:

---

[2] On the Offender Authorization for Payment voucher dated August 2, 2010, Plaintiff wrote that the mailing was a "grievance concerning the 7-21-2010 retaliational transfer from Pinckneyville Correctional Center to Lawrence Correctional Center sent to the Adm. Review for handling Springfield ARB office" (Doc. 1, p. 9, Exh. C).
[3] On the Offender Authorization for Payment voucher dated October 12, 2010, Plaintiff wrote that the mailing was a "letter to Acting Director inquiring about why I haven't received a response to my 8-2-2010 grievance sent to the ARB about a 7-13-2010 incident at Pinckneyville" (Doc. 1, p. 9, Exh. D).

3

| | | |
|---|---|---|
| Court: | | Mr. Ford, did you write this information on there at the time you filled out these forms or at a later time? |
| Ford: | | When I filled out the money voucher, your Honor, I wrote down specifically what it was for and attached it to the grievance and mailed it from Lawrence Correctional Center from inside of my cell there, put it in the door like we have been told to do. |
| Court: | | All right. Hold on. Hold on. You – but here, listen to my specific question. Okay. This offender authorization for payment, dated August 2, 2010, it says down on this line it says account for the purpose of it says "grievance concerning the 7/21 retaliation transfer from Pinckneyville Correctional Center to Lawrence sent to Administrative Review Board handling Springfield ARB Office." Did you fill that in at the same time you filled in all the other information on this form or did you fill it in later? |
| Ford: | | I filled it in exactly at that time when I mailed it. |

(Doc. 41, p. 20.) The original voucher was submitted to and maintained by the institution. The Court, wary of the potential for error, granted defendants 14 days, until May 10, 2012, in which to file the institutional copies of the vouchers with the Court from the files kept at Lawrence to verify that Plaintiff wrote the description of the legal mail at the time he submitted the form to the institution, not later in preparation for this lawsuit.

*Defendant's Supplement*

On May 10, 2012, the defendants filed a supplemental brief to their motion for summary judgment on the question of exhaustion, which included the institutional copies of the two Offender Authorization for Payment vouchers at issue (Doc. 43). The institutional copy of the August 2, 2010, voucher submitted by defendants does not contain the statement describing the contents of the mailing that appears on the voucher submitted by the Plaintiff. Moreover, the voucher submitted by defendants is date-stamped "Received by Lawrence CC Accounting Section" on August 3, 2010. The voucher submitted by Plaintiff contains no such indicia.

Defendants argued, therefore, that the voucher submitted by Plaintiff cannot support exhaustion because it does not demonstrate that Plaintiff mailed a grievance about the claims or defendants raised in the complaint. Defendants concluded that the Jackie Miller affidavit, in which she averred that the ARB did not receive any grievances regarding retaliation by Defendants Davis and Butler from Ford between July 15 and September 15, 2010, and the discrepancy between the copy of the legal-mail voucher submitted by Ford and the copy retained by defendants (which contains no description of the mailing) support their position that Plaintiff did not file a grievance with the ARB about retaliation by Defendants Davis and Butler.[4] Defendants argue, therefore, that Plaintiff's claims should be dismissed for failure to exhaust (Doc. 43).

Plaintiff filed a reply and exhibits to the defendants' supplemental brief (Docs. 46 and 47). He argued that he submitted legal mail on August 3, 2010, and he claims that it was a grievance regarding his retaliatory treatment by defendants. Plaintiff contends that defendants cannot disprove the existence of such a grievance unless they can produce what was mailed on that date through the legal mail. Plaintiff included as an exhibit to the reply a letter addressed to the Clerk of Court in which he claims that he is still being retaliated against in the form of false disciplinary charges made against him on May 20, 2012.

## CONCLUSIONS OF LAW

*Legal Standards*

The PLRA provides:

No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

---

[4] The institutional copy submitted by defendants of the October 21, 2010, Offender Authorization for Payment voucher is identical to the copy submitted by Plaintiff.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally. If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. ILL. ADMIN. CODE TIT. 20, § 504.810. Inmates are directed to submit grievances directly to the ARB about "decisions regarding disciplinary proceedings that were made at a facility other than the facility where the offender is currently assigned. ILL. ADMIN. CODE TIT. 20, § 504.870(a)(3).

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become

6

"unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

## *Discussion*

Based on the evidence adduced and arguments made at the hearing and in the supplemental briefs, it is recommended that the Court find Plaintiff did not exhaust his administrative remedies prior to filing suit.

The institutional copy of the legal-mail voucher, which does not contain the description of the legal mail sent on August 3, 2010, dooms Plaintiff's case. First, it demonstrates that Plaintiff misled the Court when the Court specifically inquired whether Plaintiff wrote the description of the legal mail on the voucher before he submitted it for mailing. The Court has reviewed the hearing transcript and finds that Plaintiff's answers to the Court's questions were designed to lead the Court to believe that Ford wrote the description of the mailing on the institutional copy. The Court asked Plaintiff directly when he wrote the description on the voucher. Plaintiff responded that he wrote the description at the time he submitted the voucher. To clarify, the Court asked Plaintiff a second time. Plaintiff responded, "I filled it in exactly that time when I mailed it." The

institutional copy of the voucher contains no description. Based on the documents, the Court finds it reasonable to believe that Plaintiff wrote the description at a later time on only his copy of the voucher. At best, Plaintiff wrote the description on only his copy just after he submitted the voucher, to remind himself of the document he mailed. At worst, Plaintiff wrote the description in preparation for litigation with intent to make the Court believe he submitted a grievance on August 3, 2010. Regardless, Plaintiff's statements led the Court to believe that he wrote the description before he submitted the voucher, not after. The documents belie such a claim.

Second, Plaintiff's false statements undermine the credibility of his other statements. For the Court to find that Plaintiff exhausted administrative remedies prior to filing suit, the Court must believe Plaintiff's statement that he sent a grievance regarding retaliation by Defendants Davis and Butler on August 3, 2010, because neither party has produced a grievance filed that day. Ford has no documentary proof of the existence of such a grievance, and the ARB never received it. Plaintiff has lost credibility with the Court due to his false statements. Thus, the Court is not inclined to believe Plaintiff's unsupported testimony that he sent a grievance to the ARB about retaliation by Defendants Davis and Butler.

Plaintiff's copy of the second voucher filed October 21, 2010, is identical to the institutional copy. That is, it appears that Plaintiff's description of the legal mail sent on that date (a letter to the Acting Director inquiring about the ARB's failure to respond to the August 3, 2010, grievance) was written on the voucher before he submitted it for mailing. As such, it supports Plaintiff's statements that he submitted a letter to the Acting Director asking about the August 3, 2010, grievance. It does not, however, support the existence of the August 3, 2010, grievance itself. As noted above, the Court is disinclined to believe Plaintiff based upon the false statements

8

he made to the Court. Moreover, Plaintiff mailed the second voucher on the same day that he filed his lawsuit in this Court. Under *Dole*, an inmate must do all that he can be reasonably expected to do to have his claims heard through the administrative process *prior to filing suit*. *Dole*, 438 F.3d at 811. The letter sent to the director inquiring about a previously-filed grievance was submitted for mailing on the same day Plaintiff filed the lawsuit. Plaintiff could not have received a response to his letter before he filed suit. Thus, he had not done all that he could be expected to do prior to filing suit. Indeed, based on these exhibits, it would be reasonable to believe that Plaintiff wrote a letter on the same day he filed his lawsuit to make it appear that he had previously filed a grievance. Based upon evidence produced and the undersigned's disinclination to believe Ford's statements, it is recommended that the Court find Plaintiff failed to properly exhaust his administrative remedies prior to filing this suit, in violation of 42 U.S.C. § 1997e(a).

## CONCLUSION

Therefore, based on all the foregoing, it is hereby **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants (Doc. 24) be **GRANTED**; that the Court **FIND** that Plaintiff did not exhaust administrative remedies prior to filing suit against Defendants Davis and Butler; that the action be **DISMISSED**; and that the Court adopt the foregoing findings of fact and conclusions of law.

**DATED: June 13, 2012**

**DONALD G. WILKERSON**
**United States Magistrate Judge**